UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** ) ) ) Plaintiff, and ) ) ) **ALUNDA D. HUNT, M.D.,** ) ) Plaintiff-Intervenor. ) ) v. ) ) **GEORGIA HOSPITALISTS GROUP, LLC and APPOLO MD BUSINESS SERVICES, LLC,** ) ) ) ) ) Defendants. ) ) | CIVIL ACTION NO. **1:16-cv-03640-ELR-JKL** |

### **ALUNDA D. HUNT, M.D.'S COMPLAINT IN INTERVENTION**

COMES NOW Alunda D. Hunt, M.D., Plaintiff-Intervenor, and for his Complaint In Intervention against Defendants Georgia Hospitalists Group, LLC and ApolloMD Business Services, LLC (together "Defendants"), states as follows:

### **NATURE OF ACTION**

1. This is an action brought by the Equal Employment Opportunity Commission ("EEOC") under Title I of the Americans with Disabilities Act, as amended ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful

employment practices on the basis of a disability and to provide appropriate relief to Plaintiff-Intervenor, Alunda D. Hunt, M.D. ("Dr. Hunt"), who was adversely affected by such practices.

2. Plaintiff-Intervenor Dr. Hunt seeks to redress the discrimination against him in violation of the ADA including based on being regarded as having a disability and Defendants impermissibly requesting medical information after he became employed. Dr. Hunt also brings a claim for breach of his employment contract under the law of the State of Georgia.

## JURISDICTION AND VENUE

3. The bases for jurisdiction are set forth in the Complaint filed by the EEOC in this action ("Complaint"), ¶ 1.

4. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because the claim is so related to Plaintiff's ADA claim that they form a part of the same case or controversy.

5. Venue is proper in this Court under 28 U.S.C. § 1391 as this is a judicial district in which the Defendants reside and in which a substantial part of the events and omissions giving rise to the claims occurred. Venue is also proper in this Court under 42 U.S.C. § 2000e-5(f)(3) as this is a district in which the unlawful

-2-

employment practices occurred.

## PARTIES

6.  Plaintiff-Intervenor Dr. Hunt is an African-American male who was employed by Defendants as a licensed physician in the metropolitan Atlanta, Georgia area.

7.  Plaintiff EEOC is identified in Complaint ¶ 3.

8.  Defendants Georgia Hospitalists Group, LLC ("GHG") and ApolloMD Business Services, LLC ("ApolloMD") are identified in Complaint ¶¶ 4, 5, and 8.

9.  Defendant ApolloMD is a company which contracts with hospitals to provide physician services and regularly employs over 500 persons.

10. On information and belief, Defendant GHG exists solely to enter into contracts on behalf of ApolloMD with physicians such as Dr. Hunt.

11. Defendant ApolloMD, through its employees, is responsible for recruiting physicians; operations and management of physician contracts entered into by GHG, such as scheduling the physicians to fulfill ApolloMD's contractual obligations to provide hospitals with physician services; and assisting the physicians with medical and administrative issues.

12. The Complaint, ¶¶ 6 and 7 including its subparagraphs, sets out

additional bases upon which Defendants are single employers/integrated enterprises, joint employers, and/or that ApolloMD was the agent of GHG so that their employees are aggregated rendering them an employer as that term is defined in the ADA, 42 U.S.C. § 12111(5).

13.  Defendants both are liable to Dr. Hunt because Defendant ApolloMD is the alter ego and/or apparent or ostensible agent of Defendant GHG and/or Defendants are a joint venture under Georgia law.

## CONDITIONS PRECEDENT

14.  All conditions precedent to the institution of this action have been fulfilled by Plaintiff EEOC and Plaintiff-Intervenor Dr. Hunt as set forth in Complaint ¶¶ 9-12 and the Court permitting Dr. Hunt to intervene in this action.

## FACTS

### Dr. Hunt's Employment

15.  On May 22, 2013, Dr. Hunt became employed by Spaulding Regional Physician Services, LLC ("SRPS") pursuant to a Physician Employment Agreement and was successfully credentialed to work at Spaulding Regional Hospital, aka Spaulding Regional Medical Center ("the Hospital"), then owned by Tenant Healthcare Corp. ("Tenant").

16. ApolloMD subsequently contracted with Tenant for ApolloMD to provide physician services at the Hospital.

17. Physicians working at the Hospital, including Dr. Hunt, were to transition from working for SRPS to working for ApolloMD commencing September 1, 2013.

18. In late July 2013, Dr. Hunt entered into a Physician Agreement ("Agreement"), nominally with GHG, to provide hospitalist services at the Hospital, the services to be provided pursuant to ApolloMD's contract to provide physician services at the Hospital.

19. Pursuant to the Agreement, Dr. Hunt was to be paid a salary of $237,000.00 per year in exchange for working 182 twelve (12) hour shifts per year -- more hours than Dr. Hunt was required to work under his Employment Agreement with SRPS, which defined a "Full-time Schedule" as an average quarterly amount of shifts equating to 180 twelve (12) hour shifts per year.

20. The Agreement also provided for bonuses for quality metrics, productivity bonuses as in the SRPS Employment Agreement, and payment of Dr. Hunt's professional liability insurance.

21. Although Defendants treated Dr. Hunt as an independent contractor for

income tax purposes, Dr. Hunt was an employee of Defendants just as he had been an employee of SRPS, subject to the standards of the Hospital.

22. The transition of Dr. Hunt's employment from SRPS to Defendants on September 1, 2013 was seamless and without change.

23. At all times that Dr. Hunt worked at the Hospital -- as an employee of SRPS and after the transition to Defendants -- he performed the same duties and reported to the same physician, Gary Rzeznick, MD, Physician Program Director for Hospitalist Services, who was employed by the Hospital as well as ApolloMD.

24. ApolloMD provided its Vice President Operations, Jackie Newman, to recruit physicians, schedule physicians at the Hospital, and assist the physicians with medical and administrative issues. Ms. Newman performed these functions for Dr. Hunt.

25. In order to maximize profits based on Dr. Hunt's work, Defendants attempted to pressure Dr. Hunt to admit and service patients he thought did not meet admission criteria and who he did not feel qualified to treat.

**Defendants' Impermissible Request for Medical Information
and the Unlawful Termination of Dr. Hunt's Employment**

26. Defendants provided Dr. Hunt with credentials in order to begin working for them on September 1, 2013, based on the same credentialing package Dr. Hunt

submitted to SRPS.

27. Prior to September 1, 2013, Defendants received Dr. Hunt's credentialing package from SRPS; additionally, on or about July 25, 2013, when Dr. Hunt signed the Agreement, he provided Defendants with the credentialing package via email and by hard copy.

28. Among other things, the credentialing package received by Defendants prior to Dr. Hunt beginning to work for them on September 1, 2013 contained the same letter submitted to SRPS from Dr. Hunt's physician dated January 9, 2012 discussing the status of Dr. Hunt's treatment for a chronic back injury, including information on prescribed drugs.

29. In September 2013, Ms. Newman, ApolloMD's Vice President Operations, requested an updated physician letter regarding Dr. Hunt's chronic back injury and treatment.

30. There was no reason for the letter to be requested since Dr. Hunt had worked all scheduled shifts from the beginning of his employment in May 2013 without incident.

31. Dr. Hunt provided the requested updated physician letter on October 10, 2013. The letter stated that Dr. Hunt's medications had been significantly reduced

since the January 2012 letter and that Dr. Hunt had been compliant with medication regimens.

32.  On October 22, 2013, Dr. Hunt received a letter dated October 18, 2013 from Bill Brigham, President of Hospital Medicine for ApolloMD, stating that based "on the correspondence of January 9, 2012 and October 10, 2013 … that describes your medications and spinal injections," Defendants concluded "that you cannot meet the requirements of your job duties" and intended to terminate Dr. Hunt's contract unless he resigned.

33.  Dr. Hunt did not resign and was fully able to meet his job duties: he worked excessive hours, performed exemplary work and was often lauded by his coworkers for his professionalism and knowledge.

34   As a result of the discrimination against him, in particular the unlawful termination of Dr. Hunt's employment, Dr. Hunt has suffered and continues to suffer from emotional pain and suffering, mental anguish, and a loss of enjoyment of life.

35.  Dr. Hunt suffered stress and strain as a result of his unlawful termination, including from financial devastation, such as the foreclosure on his house.

36.  Defendants discrimination against Dr. Hunt was intentional and they acted willfully and with malice, wantonness, oppression and/or reckless indifference

to Plaintiff's federally-protected rights and the consequences of their actions.

### Defendants' Breach of Dr. Hunt's Physician Agreement

37. Under the terms of Dr. Hunt's Physician Agreement, ¶ 8.B., Defendants could "terminate this Agreement without cause upon 90 days notice."

38. Defendants terminated the Agreement without cause and without giving Dr. Hunt 90 days notice or paying him for the 90 day period.

39. By letter dated October 22, 2013, Dr. Hunt, through his previous counsel, demanded payment of his salary for 90 days from the date of his termination.

40. Defendants have failed and refused to pay Dr. Hunt the amount he is due under his written agreement with them. Defendants have been stubbornly litigious, acted in bad faith, and put Dr. Hunt to unnecessary trouble and expense, entitling Dr. Hunt to attorneys' fees and expenses of litigation for Dr. Hunt's breach of contract claim pursuant to O.C.G.A. § 13-6-11.

### CAUSES OF ACTION

### COUNT I - DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

41. Plaintiff-Intervenor Dr. Hunt incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 40 of this Complaint in Intervention.

42. Under applicable law, there was an employee-employer relationship

between Dr. Hunt and Defendants; Dr. Hunt was not an independent contractor.

43. Throughout his employment, Dr. Hunt was fully able to perform the essential functions of his job.

44. Defendants discriminated against Dr. Hunt in violation of the ADA by terminating his employment because it regarded him as disabled, assumed he was unable to perform, due to his medications.

45. Defendants' request for updated medical information from Dr. Hunt after he became employed violated the ADA because it was not "job-related and consistent with business necessity" as there was no basis to question Dr. Hunt's ability to perform job-related functions.

46. Because there was an employee-employer relationship between Dr. Hunt and Defendants, Defendants are liable to Dr. Hunt under the ADA for discriminating against him.

## COUNT II - BREACH OF CONTRACT

47. Plaintiff-Intervenor Dr. Hunt incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 46 of this Complaint in Intervention.

48. Defendants breached the Physician Agreement with Dr. Hunt by terminating the Agreement without cause and without giving Dr. Hunt 90 days notice or paying him for the 90 day period.

49.     Defendants are liable to Dr. Hunt in the amount of $58,438.00 which is what he was owed for 90 days pay based on his salary of $237,000.00 per year under the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Intervenor Dr. Hunt prays that this Court:

a.      Declare that the acts and practices complained of herein are in violation of the ADA;

b.      Enjoin Defendants from engaging in such conduct in the future;

c.      Direct Defendants to make Plaintiff-Intervenor whole for all earnings, including fringe benefits, Plaintiff-Intervenor would have received but for the discriminatory treatment of him;

d.      Award to Plaintiff-Intervenor and against Defendants the maximum amount of compensatory and punitive damages under 42 U.S.C. §1981a;

e.      Award to Plaintiff-Intervenor and against Defendants the amount of $58,438.00 for breach of Dr. Hunt's Physician Agreement;

f.      Award to Plaintiff-Intervenor and against Defendants his costs and attorneys' fees, and pre and post-judgment interest; and

g.      Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff-Intervenor demands a trial by jury.

Respectfully submitted,

s/Sandra Kaye Bowen
Georgia Bar No. 409315
Email: sbowen@ibhslaw.com

IRVIN BOWEN HALE-SMITH LLC
Buckhead Centre
2970 Peachtree Road, Suite 225
Atlanta, Georgia 30305
tel.   (404) 237-1033
fax    (404) 364-4547

Counsel for Plaintiff-Intervenor